843 F.2d 1391
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 No. 87-1326.
 
 Menearl HUNTER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1988.
 Before ENGEL, MERRITT and CORNELIA G. KENNEDY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Menearl Hunter ("claimant") appeals from the judgment of the District Court affirming the Secretary's denial of social security disability benefits. For the following reasons, we affirm.
 
 
 2
 The claimant applied for supplemental security income on January 13, 1984. In her application she claimed that she was disabled due to a slipped disc with a pinched nerve, high blood pressure, and a heart condition. The Secretary denied her application initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on October 25, 1984.
 
 
 3
 The claimant testified at the hearing that she was fifty-two years old, that she had completed high school and that she had an associate degree in mental health. She had held several short-term jobs for two to three months each, and had worked as a clerk at Wayne County Community College for approximately one year, from September, 1977 through August, 1978. The job required her to answer telephones, use a copy machine, file and type, Joint Appendix at 53, and involved sitting for seven hours per day, bending occasionally, and lifting items that weighed up to ten pounds. Id. at 78, 95.
 
 
 4
 The claimant testified that she experiences sharp chest pains accompanied by shortness of breath. The pain lasts only a minute or two when she's lying down, without medication. She stated that she has suffered from high blood pressure since 1979, but that she controls it with medication. She feels dizzy when she wakes up in the morning and when she bends or stands up abruptly. She has constant low back pain, and when she stands she sometimes gets shooting pains from her low back to her neck that occasionally radiate down her left leg. Although medication eases the pain, the back pain is constant. Id. at 31-38.
 
 
 5
 She further testified that the pain affects her concentration and her ability to walk and stand. She can sit for only twenty to twenty-five minutes at a time. She needs help getting in and out of the bath tub. Although her son does heavy housework for her, she can cook, clean and dust. She can walk only one-half block at a time, stand for only fifteen minutes at a time, and can lift up to only five pounds. Id. at 37-38, 46-49.
 
 
 6
 The medical records indicated that the claimant entered Harper-Grace Hospital in August, 1982, complaining of a burning sensation and numbness in her left leg, along with pain in her back and her left leg. Her treating physician, Dr. James, examined her, finding that "[t]his is a lady who was in pain." Joint Appendix at 113. He found that though her back suffered from spasm it had a normal range of motion. She had a problem with straight leg raising on the left, weakness in her left foot plantar flexion and decreased sensation in her left foot. The remainder of his examination was "unremarkable" except for finding a Grade II/VI murmur which had been present for many years. An x-ray revealed Grade I spondylolithesis and a mild anterior displacement of L4 and L5. He diagnosed her as suffering from spondylolithesis with radiculopathy, and hypertension.
 
 
 7
 Subsequent physical therapy reports showed that the claimant's condition improved with therapy. A therapist's report dated October, 1982 indicated that the claimant's range of motion in both upper and lower extremities was within normal limits, and that her strength was generally within normal limits with a mild decrease in strength of the left extremity due to pain upon resistance. The physical therapist found that she was independent in her activities of daily living. Joint Appendix at 132. In November, 1982 the therapist reported that the claimant's low back pain was decreasing, but that she continued to feel discomfort in her right lower extremity. Id. at 135. A later progress note showed that the claimant's lower back pain continued to improve with treatment, and that she was tolerating the treatment well. Id. at 136. The therapist summarized on November 9, 1982 that though the treatment decreased the claimant's lower back pain, she continued to experience pain, numbness, and tingling in her lower left extremities. Id. at 138.
 
 
 8
 In December of 1983 Dr. James reported that the claimant suffered from valvular heart disease, hypertension, and spondylolithesis of the lumbar spine with radiculopathy. He stated that the claimant "has restriction and limitation(s) of her physical activity due to her disease(s)." Id. at 123. Dr. James reported in January of 1984 that there was evidence of decreased sensation of the left foot and leg, weakness of the left dorsiflexion, and pain in the back and down the left leg. However, the claimants had unrestricted range of motion and her reflexes were normal. Straight leg raising was positive on the left. The doctor reported evidence of valvular heart disease and cardiomegaly. A clinical exam showed normal breath sounds and an ECG was normal.
 
 
 9
 Dr. Rojas, an internist, examined the claimant in August of 1984. The claimant complained to him of back pain, localized in the lumbar area and radiating down her left leg to her ankle. She told him that she was able to cook and wash dishes, but that she was not able to walk more than a half block. Her back pain was present every day and was exacerbated by lifting more than five to ten pounds, walking more than half a block, and sitting in a sofa or bending. The claimant also complained of pain in the neck radiating to her head. Motrin controlled her pain "except on cloudy days." The claimant told the doctor that she has suffered from a heart condition since she was six. Dr. Rojas noted a lumbar 2 slipped disc and arterial hypertension. Id. at 139-40.
 
 
 10
 Dr. Rojas, examining her musculoskeletal system and extremities, found that the claimant's spines had a normal configuration except for accentuation of the lumbar lordosis. The lumbosacral spine had flexion of eighty degrees and extension of thirty degrees. Lateral tilting right and left was twenty degrees. Straight leg raising was ninety degrees both right and left. The joints of the extremities were not swollen, had a normal configuration, and had full normal range of motion. Id. at 142. He diagnosed arterial hypertension, chronic back pain, aortic valve disease, dyspnea, and cardiomegaly. He noted that the claimant's chronic back pain suggested lumbar radiculopathy, but that "there is little physical finding to corroborate." He said that "[s]he will be able to do well with anti-inflammatory drugs and physical therapy." Id. He found her arterial hypertension well controlled. Id. at 143.
 
 
 11
 Dr. Rojas also assessed the claimant's ability to do work-related activities. He reported no limitations on sitting, but recommended that she avoid heavy lifting and carrying objects of more than twenty-five pounds, standing for more than one to two hours at a time, and prolonged walking because of lower back pain and dyspnea. He further found that she should avoid frequent bending, and pushing or pulling objects heavier than twenty-five pounds due to back pain. Id. at 147-48.
 
 
 12
 Dr. Knocke examined the claimant in July of 1984. He found that her motion of her lumbar spine was restricted by low back pain, showing sixty degrees of flexion, ten degrees of extension, twenty degrees of lateral bend and ten degrees of rotation. Id. at 150. He found straight leg raising to be painful and only thirty degrees on the left, but unpainful and ninety degrees on the right. She showed poor balance walking on her heels and toes. Dorsiflexion at the left ankle and big toe was markedly diminished from that on the right. His medical assessment of her ability to do work related activities was that she could do no repeated lifting, could not carry, push or pull more than ten pounds, could not stand or walk for longer than a half hour at a time, and could not bend repeatedly. He placed no restrictions on sitting. Id. at 152-53.
 
 
 13
 The ALJ asked the vocational expert whether to assume the evidence supported a finding that the claimant could sit for six of eight hours, stand and walk for two of eight hours, and lift ten pounds occasionally and lesser weights more frequently, and further to assume that the claimant had back pain radiating into the left lower extremity and chest pain that was discomforting but not severe, that the claimant was unable to stand for over one-half hour, engage in prolonged walking, or repetitive stooping, squatting or bending. Based on these assumptions the expert testified that the claimant could perform her past work as a clerk, which the vocational expert classified as sedentary.[1]
 
 THE ALJ'S FINDINGS
 
 14
 The ALJ concluded that the claimant was not disabled because she could perform her past relevant work. He made the following findings: the claimant has not engaged in substantial gainful activity since 1978; the medical evidence established that the claimant has well-controlled hypertension, possible aortic heart disease with occasional chest pain, and spondylolithesis of the back at L4 to L5 level; the claimant did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Sec. 404, Subpart P, Appendix 1; the claimant's testimony was not entirely credible with respect to her allegation that she was unable to work; the claimant has the residual functional capacity to perform work-related activities except for work involving prolonged walking or standing, the lifting of over ten pounds on occasion, or repetitive bending, squatting or stooping; the claimant's impairments did not prevent the claimant from performing her past relevant work. Joint Appendix at 16.
 
 REVIEW
 
 15
 Pursuant to 42 U.S.C. Sec. 405(g) the Secretary's findings are conclusive if supported by substantial evidence. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). This Court must evaluate the record taken as a whole. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir.1978).
 
 Pain
 
 16
 The claimant argues that the District Court erred in not finding that the claimant's complaints of pain and physical limitations precluded her from performing sedentary work. 42 U.S.C. Sec. 423(d)(5) provides the standard for evaluating complaints of pain, which the Sixth Circuit has interpreted as setting forth a two-part test, requiring "evidence of an underlying medical condition and (1) ... objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." Duncan v. Secretary of Health and Human Servs., 801 F.2d 847, 853 (6th Cir.1986). The objective medical evidence establishes that the claimant suffers from hypertension, possible aortic valve disease, and spondylolithesis at L4-L5. Thus the first prong of the Duncan test has been met. The next question is whether there is objective medical evidence to confirm the severity of the claimant's alleged pain, or whether any of those conditions is of a severity that can reasonably be expected to give rise to the alleged pain.
 
 1. Back Pain
 
 17
 There is no question that the claimant suffers pain in her lower back and leg, the question is whether it is disabling. Dr. Rojas' report indicates that in spite of the pain the claimant performed well on motion tests, and the physical therapist reported that the treatment appeared to be alleviating the claimant's back pain, although doing little for the pain in her lower left extremities. The assessments of both Dr. Rojas and Dr. Knocke indicate that pain does not prevent the plaintiff from engaging in some limited activity.
 
 
 18
 None of the claimant's doctors speak of the claimant's condition or pain as severe, and the x-rays taken while the claimant was hospitalized revealed only grade I spondylolithesis and a "mild" displacement of L4 and L5. Indeed, Dr. Rojas commented that there is little physical finding to corroborate the claimant's complaints of lumbar radiculopathy.
 
 2. Heart Condition and Hypertension
 
 19
 The objective medical evidence does not provide a basis for claimant's testimony that she suffers from disabling chest pain. The record shows few, if any, complaints of severe chest pain. The hypertension is well-controlled, and she has lived almost her entire life with the heart problems, which did not prevent her from working at numerous jobs.
 
 3. Dizziness
 
 20
 The claimant also argues that she suffers from disabling dizziness, a result of the medication she takes to control her hypertension. Although she may suffer some dizziness, the record fails to show that it is disabling. The claimant herself described the dizziness as something she gets in the morning when getting out of bed, or when she stoops or bends. Joint Appendix at 33. There is no medical evidence to confirm the severity of the dizziness.
 
 Credibility
 
 21
 The claimant also contends that ALJ erred in finding that her testimony as to her pain was not entirely credible. This Court has previously suggested that the ALJ's opportunity to observe the claimant's demeanor and evaluate her credibility is entitled to special deference. Kirk v. Secretary of Health and Human Servs., 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). The ALJ reasoned that the medical evidence did not corroborate her testimony, referring to specific inconsistencies.[2] We believe that substantial evidence supports the ALJ's disbelief.
 
 Vocational Expert
 
 22
 Finally, the claimant contends that the ALJ erred when it posed its hypothetical question to the vocational expert, arguing that the ALJ asked the expert to assume facts not supported by the record. However, we find that the ALJ drew his assumptions from the medical assessments of Dr. Rojas and Dr. Knocke.
 
 
 23
 Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 The regulations define sedentary work as follows:
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 [20]
 C.F.R. Sec. 404.1567
 
 
 [2]
 The ALJ also found that the claimant's testimony was consistent with an ability to perform sedentary work. She testified that sitting relieves her leg pain; that the chest pains last only a minute or two, and that she is able to cook and wash dishes